# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

| | |
|---|---|
| Michael Cheek and JoAnn Cheek | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | * |
| | * |
| Abney and Fountain Properties, LLC | * |
| Lavender Mountain Earthworks, LLC | * |
| Franklin Rene Fountain and | * |
| Michael Lane Redding, | * |
| | * |
| Defendants. | * |
| _____ | * |

## Complaint for Injunctive Relief and Damages

### Nature of Action

1. This is an enforcement action under the Clean Water Act's citizen suit provision with supplemental state law claims. Defendants are violating the Clean Water Act by discharging polluted stormwater into waters of the United States without a permit.

### Jurisdiction

2. This Court has subject matter jurisdiction for the Clean Water Act ("CWA") claim under 28 U.S.C. § 1331 and 33 U.S.C. § 1365(a) and has supplemental jurisdiction for state law claims under 28 U.S.C. § 1367.

## Venue

3. Venue is proper in the Northern District of Georgia under 28 U.S.C. §1391(b)(2) and 33 U.S.C. § 1365(c)(1) because the source of the Clean Water Act violations is in this judicial district.

## Pre-Suit Notice

4. Plaintiffs served defendants with notice of intent to sue over 60 days before filing this suit, as required by 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R. Part 135, Subpart A. Copies of the notice letters are at Doc. No. 1-1 (notice letter to Abney and Fountain Properties, LLC and Franklin Rene Fountain) and Doc. No. 1-2 (notice letter to Lavender Mountain Earthworks, LLC and Michael Lane Redding). Affidavits of service are at Doc. No. 1-3.

5. Copies of the notice letters were mailed to the Administrator of the United States Environmental Protection Agency ("EPA"), the Region 4 EPA Regional Administrator, and the Director of the Georgia Environmental Protection Division ("EPD"), as required by 40 C.F.R. Part 135, Subpart A. Proof of delivery is at Doc. No. 1-4 (notice letter for Abney and Fountain Properties, LLC and Franklin Rene Fountain) and Doc. No. 1-5 (notice letter for Lavender Mountain Earthworks, LLC and Michael Lane Redding).

## Parties

6. Michael Cheek and JoAnn Cheek own property at 3087 Fosters Mills Road, Floyd County Parcels E16 021 and E17 011. Defendants' construction activity causes eroded soil to pollute streams and a lake on the Cheek's property. The polluted stormwater lessens the aesthetic, recreational, and economic values of the Cheek's property and interferes with the Cheek's use and enjoyment of their property. These injuries would be redressed by the relief requested in this suit.

7. Abney and Fountain Properties, LLC owns 241.218 acres at 4780 Blacks Bluff Road, Floyd County Parcel E16 066 ("the project site").

8. Franklin Rene Fountain exercises control over construction activities at the project site. He has the capacity to obtain permit coverage for land disturbance, install best management practices for erosion control, stabilize the project site, and stop intrusions upon the Cheek's property rights.

9. Lavender Mountain Earthworks, LLC and Michael Lane Redding filled a stream channel without a permit, have been clearing and grading the project site without a permit, and have primary day-to-day operational control of land disturbance and construction activities violating the Clean Water Act.

## The Facts

10. Around 165 acres of trees and around 50 acres of grass were cleared, grubbed, and graded at the project site without erosion control.

11. Stormwater is discharged as channelized runoff into two streams on the project site.

12. The streams on the project site are relatively permanent, continuously flowing tributaries of Big Cedar Creek.

13. The tributary streams convey suspended sediment from disturbed land on the project site onto the Cheeks' property.

14. Before land disturbance, water in the tributary streams and in a lake on the Cheeks' property was clear. Since the land disturbance, eroded soil from the project site pollutes the tributary streams when it rains, and the lake remains turbid with suspended sediment for weeks after the rain stops.

15. Sediment that doesn't settle out in the lake flows downstream to Big Cedar Creek, the Coosa River, and Lake Weiss.

16. Turbidity and sedimentation caused by defendants' land disturbance harms aquatic species, including macroinvertebrates, fish, and amphibians.

17. Defendants filled part of a stream channel to use as a road crossing on the project site.

18. Defendants' construction activities on the project site significantly increased the volume and velocity of stormwater discharging onto the Cheeks' property.

19. Flooding caused by defendants' construction activities on the project site has prevented vehicle access to the Cheeks' home.

20. Turbidity, sedimentation, and the increased volume of stormwater from the project site have gotten worse since the Cheeks sent notice of these problems to defendants Abney and Fountain Properties, LLC and Franklin Rene Fountain in July 2024.

### Count 1 – Violations of CWA § 301 for Discharging Pollutants Without an NPDES Permit Issued Under CWA § 402

21. CWA § 505(a)(1) authorizes a citizen suit against any person alleged to be in violation of an "effluent standard or limitation," which includes an "unlawful act" under § 301(a). *33 U.S.C. § 1365(a)(1), (f)(7).*

22. CWA § 301(a) makes it "unlawful" to discharge any pollutant except "in compliance with" specific sections, including § 402 and § 404. *33 U.S.C. §§ 1311(a) (referencing 33 U.S.C. §§ 1342 and 1344).*

23. The phrase "discharge of a pollutant" means any addition of a pollutant to waters of the United States ("waters of the U.S.") from any point source. *33 U.S.C. § 1362(7), (12).*

24. A National Pollutant Discharge Elimination System permit ("NPDES permit") issued under section 402 of the Act is required to lawfully discharge any pollutant. *33 U.S.C. §§ 1311(a), 1342(a); 40 C.F.R. §§ 122.3, 122.21(b).*

25. An NPDES permit is required to lawfully discharge stormwater associated with construction activity. *33 U.S.C. § 1342(p)(3)(A), (p)(6); 40 C.F.R. § 122.26(b)(14)(x), (b)(15), (c)(1).*

26. Construction activity includes clearing or grading that results in land disturbance of at least one acre. *33 U.S.C. § 1342(p)(3)(A), (p)(6); 40 C.F.R. § 122.26(b)(14)(x), (b)(15), (c)(1).*

27. EPA established a one-acre threshold because at smaller sites, stormwater is less likely to channelize and create a point source discharge.

28. Clearing and grading at the project site resulted in land disturbance of around 215 acres.

29. Stormwater runoff on the project site formed channels in the ground, creating point source discharges that convey stormwater with eroded soil into the tributary streams.

30. The project site was cleared and graded for a solar farm (photovoltaic solar panels attached to the ground absorb the sun's energy, which is then converted to electricity and sent to the power grid).

31. Land disturbance for a solar farm requires coverage under an NPDES permit.

32. Non-point-source agricultural and silvicultural activities are exempt from NPDES permitting requirements, but stormwater discharges associated with industrial activity — including solar farms — are not exempt. *33 U.S.C. § 1342(l)(1), (l)(3), (p)(3), (p)(6); 40 C.F.R. § 122.3(e).*

33. The project site previously had pasture and forest, but defendants graded the land not as part of any agricultural or silvicultural activities, but for commercial energy development.

34. Land disturbance for a solar farm is not agricultural activity.

35. Land disturbance for a solar farm is not silvicultural activity.

36. The nature and extent of land disturbance at the project site altered soil conditions, rendering the site incompatible with any agricultural or silvicultural crop that could grow there.

37. Defendants' actions — including widespread stump removal, deep burial of debris, excessive grading, and failure to implement erosion control — are inconsistent with any standard practice for agriculture or silviculture.

38. Franklin Rene Fountain expressly acknowledged he was preparing the site for use as a solar farm.

39. Despite clearing and grading around 215 acres for a solar farm, defendants did not obtain NPDES permit coverage.

40. Defendants did not install best management practices for erosion control that would have been required by an NPDES permit. *(General NPDES Permit GAR 100001, Stormwater Discharges Associated with Construction Activity for Stand Alone Construction Projects).*

41. Defendants' failure to install best management practices for erosion control and stabilize the site with vegetative ground cover cause sediment-polluted stormwater to be channelized and discharged into tributary streams on the project site.

42. Defendants violated CWA § 301(a) by causing sediment-polluted stormwater to be channelized and discharged into tributary streams on the project site without NPDES permit coverage on these dates when it rained at least an inch over a 24-hour period:

    Jan. 5-6, 2024; Jan. 8-9, 2024; Jan. 24-25, 2024;
    Jan. 25-26, 2024; Feb. 12-13, 2024; Mar. 1-2, 2024;
    Mar. 5-6, 2024; Mar. 8-9, 2024; May 7-8, 2024;
    May 9-10, 2024; May 18-19, 2024; May 26-27, 2024;
    July 8-9, 2024; July 19-20, 2024; July 28-29, 2024;
    Sept. 25-26, 2024; Sept. 26-27, 2024; Nov. 13-14, 2024;
    Nov. 19-20, 2024; Dec. 10-11, 2024; Jan. 17-18, 2025;
    Feb. 11-12, 2025; and Feb. 12-13, 2025.

43. Discharges of sediment-polluted stormwater into the tributary streams in violation of CWA § 301(a) are likely to continue until all soil surfaces on the project site are uniformly covered in permanent vegetation with at least 70 percent density.

## Count 2 – Violations of CWA § 301 for Filling a Stream Channel Without a Permit Issued Under CWA § 404

44. A permit issued by the U.S. Army Corps of Engineers under CWA § 404 is required to lawfully discharge fill material into waters of the U.S. *33 U.S.C. §§ 1311(a), 1344; 33 C.F.R. § 323.3(a).*

45. "Fill material" means material placed in waters of the U.S. where the material has the effect of (i) replacing any part of a water of the U.S. with dry land, or (ii) changing the bottom elevation of any part of a water of the U.S. *33 U.S.C. § 323.2.(e)(1).*

46. Fill material (dirt) was placed in around 25 linear feet of stream channel in the project site's western tributary to create a road crossing.

47. Filling the stream channel replaced part of a water of the U.S. with dry land, converted an area of the water into a use to which it wasn't previously subject, elevated the bottom of a water of the U.S., and impairs the flow of water.

48. Filling the stream channel required a permit from the Corps. *33 C.F.R. §§ 323.3(a), 323.4(c).*

49. Even if the stream was filled as part of a farm road or forest road, it wouldn't be exempt from section 404 permitting requirements. *33 C.F.R. § 323.4.*

50. The agricultural and silvicultural exemption "does not include the construction of farm, forest, or ranch roads" except "where such roads are constructed and maintained in accordance with best management practices (BMPs) to assure that flow and circulation patterns" of waters of the U.S. are not impaired. *33 C.F.R. § 323.4(a)(1)(iii)(B), (a)(6).*

51. To qualify under this exemption, required BMPs include: installing a bridge or culvert "to prevent the restriction of expected flood flows;" stabilizing the crossing "to prevent erosion;" and designing and constructing the crossing to prevent disrupting the movement of aquatic life. *C.F.R. § 323.4(a)(6)(iii), (iv), (vii).*

52. The stream was filled without a bridge or culvert, without stabilization, and without allowing for the movement of aquatic life.

53. Defendants didn't obtain an individual permit and the activity wasn't authorized under a nationwide permit ("NWP"), which is a type of general permit.

54. "An activity is authorized under an NWP only if that activity and the permittee satisfy all of the NWP's terms and conditions." 33 C.F.R. § 330.1(c). *See also*, *33 C.F.R. § 330.4* ("A prospective permittee must satisfy all terms and conditions of an NWP for a valid authorization to occur.").

55. NWP general condition # 2 requires waterbody crossings to be "suitably culverted, bridged, or otherwise designed and constructed to maintain low flows to sustain the movement" of "those species of aquatic life indigenous to the waterbody". *(Nationwide Permit General Condition 2, Aquatic Life Movements, 86 FR 2744-01, 2868 (Jan. 13, 2021)).*

56. The fill was placed in the stream channel without a culvert, bridge, or other structure to provide flow for water or movement for aquatic life.

57. NWP general condition # 12 states that appropriate "soil erosion and sediment controls must be used and maintained in effective operating condition during construction, and all exposed soil and other fills, as well as any work below the ordinary high water mark … must be permanently stabilized at the earliest practicable date." *(Nationwide Permit General Condition 12, Soil Erosion and Sediment Controls, 86 FR 2744-01, 2868 (Jan. 13, 2021)).*

58. The stream channel was filled without erosion control and without stabilizing the exposed soils.

59. Defendants violated and continue to violate CWA § 301(a) by filling the stream channel without a permit under § 404, and by maintaining unpermitted fill material in the stream channel.

## Count 3 – Negligence Per Se

60. Georgia established "water quality standards" to prevent pollution, protect aquatic life, and support recreation.

61. Georgia's water quality standards require water quality in all state waters to support resident species of aquatic life. *Georgia DNR Rule 391-3-6-.03(5)(c)*.

62. Defendants' discharges of sediment-polluted stormwater from the project site violate water quality standards by degrading aquatic habitat and displacing aquatic species in the tributary streams and lake.

63. Georgia's water quality standards also require surface waters to be free from "turbidity which results in a substantial visual contrast in a water body due to a manmade activity." *Georgia DNR Rule 391-3-6-.03(5)(d)*.

64. Defendants' discharges of sediment-polluted stormwater from the project site violate water quality standards by causing turbidity resulting in a substantial visual contrast in the tributary streams and the lake.

65. Plaintiffs are within the class of people Georgia's water quality standards are intended to protect, and their injuries are of the kind that Georgia's water quality standards are intended to prevent.

### Count 4 – Trespass

66. Defendants unlawfully interfered with plaintiffs' right to enjoy their property by discharging sediment-polluted stormwater onto plaintiffs' property.

67. Defendants unlawfully interfered with plaintiffs' right to enjoy their property by increasing the amount of stormwater flowing onto plaintiffs' property.

68. Defendants trespassed by discharging sediment-polluted stormwater and increased amounts of stormwater onto plaintiffs' property. O.C.G.A. § 51-9-1.

### Count 5 – Nuisance

69. Defendants' continuing discharges of sediment-polluted stormwater and increased amounts of stormwater cause damage and inconvenience to plaintiffs.

70. Defendants' unreasonable interference with plaintiffs' use and enjoyment of their property is a nuisance. O.C.G.A. § 41-1-1.

### Count 6 – Negligence

71. Defendants have a duty when undertaking land disturbing activities to perform the work in a way that does not cause damage to downstream property.

72. Defendants have a duty not to create conditions that pollute downstream property or increase the amount of stormwater discharged onto downstream property.

73. Defendants breached these duties thereby causing the repeated and excessive discharge of sediment-polluted stormwater and increased amounts of stormwater from the project site onto plaintiffs' property.

74. Defendants' actions caused damage to plaintiffs and their property.

### Count 7 – Compensation for Litigation Expenses

75. Defendants acted in bad faith by discharging sediment-polluted stormwater and increased amounts of stormwater onto plaintiffs' property.

76. Defendants acted in bad faith by failing to stop discharging sediment-polluted stormwater onto plaintiffs' property and by failing to stop discharging increased amounts of stormwater onto plaintiffs' property after notice.

77. Lavender Mountain Earthworks, LLC and Michael Lane Redding have been stubbornly litigious and caused plaintiffs unnecessary trouble and expense by failing to respond to the pre-suit notice letter and forcing plaintiffs to sue.

78. Plaintiffs are entitled to recover the expenses of litigation, including reasonable attorney fees and expert witness fees. O.C.G.A. § 13-6-11.

## Count 8 – Punitive Damages

79. Before doing any land clearing, grading, and other construction activity at the project site, it was foreseeable clearing and grading over 200 acres with no erosion control would cause damage to plaintiffs and their property.

80. These foreseeable impacts could have been avoided but defendants intentionally chose to clear and grade over 200 acres with no erosion control.

81. Even after receiving notice that the construction activities were causing excessive stormwater and sediment to be discharged onto plaintiffs' property and into the tributary streams and lake, defendants did not take action to remedy these impacts.

82. Defendants' conduct has been wanton and reckless, and their conduct manifests a conscious indifference to the damaging consequences.

83. Defendants' conduct justifies the imposition of punitive damages. O.C.G.A. § 51-12-5.1.

## Count 9 – Injunctive Relief Sought Against Property

84. Repeated and excessive discharges of sediment-polluted stormwater are causing irreparable harm for which plaintiffs have no adequate remedy at law.

85. Plaintiffs seek an injunction, as described in the requested relief at page 18, that requires the project site to be altered so stormwater discharges do not continue to violate the CWA and unreasonably damage plaintiffs' property.

86. The project site is described as: "All that tract or parcel of land situated, lying and being in Land Lots 151, 152, 153, 154, 207, 208, 209 and 210 of the 3rd District and 4th Section of Floyd County, Georgia and being that certain 241.218 acres as described in a "Retracement Survey for Abney & Fountain Properties LLC" prepared by Elbert H. Angel, Registered Land Surveyor No. 1742 and recorded in Plat Book 39, Page 234 in the Office of the Clerk of Superior Court of Floyd County, Georgia Records."

87. The project site was conveyed to Abney and Fountain Properties, LLC by Warranty Deed, as recorded in Deed Book 2762, Pages 786-787, Clerk of Superior Court of Floyd County, Georgia.

88. The project site is identified as 4780 Blacks Bluff Road, Rome, Georgia, according to the present system of numbering property in Floyd County, Georgia (Floyd County Parcel E16 066).

## Requested Relief

Plaintiffs respectfully request the following relief:

a.  A judgment finding that defendants violated and are in violation of the Clean Water Act.

b.  An injunction requiring defendants to: a) take all actions necessary to ensure defendants' activities at the project site cause no further damage to plaintiffs' property; b) obtain NPDES permit coverage for stormwater discharges associated with construction activity at the project site; c) install silt fence around the project site's perimeter; d) install at least 14,405 cubic yards of sediment storage on the project site; e) retain a licensed professional engineer to design an Erosion, Sedimentation, and Pollution Control Plan based on specifications in the Manual for Erosion and Sediment Control in Georgia; f) install and maintain best management practices for erosion control specified in the Erosion, Sedimentation, and Pollution Control Plan until all soil surfaces on the project site are uniformly covered in permanent vegetation with at least 70 percent density ("final stabilization"); g) measure and record rainfall on the project site once every 24 hours except any non-working weekend or holiday until final stabilization; h) retain certified personnel to inspect all disturbed areas on the project site and all structural control measures on the project site to ensure they are operating correctly at least once every seven days and after every storm with at least a half-inch of rain until final stabilization; i) retain certified personnel to sample the furthest downstream part of each tributary stream for turbidity after every rain event of 0.5 inch or greater within any 24 hour period until final stabilization; j) remove fill material in the western tributary or obtain a permit for the fill from the U.S. Army Corps of Engineers; and k) retain a licensed professional engineer to design a post-construction stormwater management system so the post-construction peak rate of discharge does not exceed the pre-construction peak rate of discharge, and so any nuisance or trespass on plaintiffs' property caused by the increased volume of stormwater is abated.

c.    Defendants be ordered to pay civil penalties for violating the Clean Water Act.

d.    Defendants be ordered to pay plaintiffs' litigation expenses, including reasonable attorney and expert witness fees under 33 U.S.C. § 1365(d).

e.    A jury trial of all issues so triable.

f.    Plaintiffs be awarded from the defendants all compensable damages, including compensation for: plaintiffs' loss of use and enjoyment of their property, the annoyance to plaintiffs caused by the continuing nuisance, the cost to repair plaintiffs' property damaged by stormwater runoff from the project site, the decrease in plaintiff's property value, and litigation expenses including reasonable attorney and expert witness fees.

g.    Defendants be ordered to pay punitive damages in such amount as the jury concludes are enough to punish and deter defendants from the wrongdoing described in this suit.

h.    Such other relief to which plaintiffs may be entitled at law or equity, as this Court considers just and appropriate.

Filed February 26, 2025.

/s/ Jon Schwartz

Jon Schwartz
Ga. Bar. No. 631038
*Attorney for Plaintiffs Michael and JoAnn Cheek*

**Law Office of Jon Schwartz**
1100 Peachtree St., N.E., Suite 250
Atlanta, GA 30309
404-667-3047
jon@jonschwartz.net