IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| Michael Cheek and JoAnn Cheek | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | *   4:25-cv-00047-WMR |
| | * |
| Abney and Fountain Properties, LLC et al. | * |
| | * |
| Defendants. | * |
| | * |

**Michael and JoAnn Cheeks' Response in Opposition to
Defendants Abney and Fountain Properties, LLC
and Franklin Rene Fountain's Motion to Dismiss**

## I.   Introduction

Michael and JoAnn Cheek alleged defendants cleared land for a solar farm. The Cheeks provided facts to support this allegation, including that defendant Franklin Rene Fountain acknowledged the site would be a solar farm. The Cheeks alleged that defendants had no permit and that clearing land for a solar farm without a permit violates the Clean Water Act.

A&F Properties and Fountain ask for dismissal by claiming it's "blatantly untrue" the site was cleared for a solar farm. But when reviewing a motion to dismiss under Rule 12(b)(6), this Court must assume the truth of well-pleaded factual allegations.

## II.  Standard of Review

To state a claim for relief, Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[1]

Rule 12(b)(6) lets a party file a motion to dismiss for "failure to state a claim upon which relief can be granted."[2] When reviewing a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint's allegations in the light most favorable to the plaintiff, accept the non-conclusory, well-pleaded factual allegations as true, and draw all reasonable inferences in the plaintiff's favor.[3]

In *Ashcroft v. Iqbal,* the Supreme Court specified that to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[4] In *Bell Atlantic Corporation v. Twombly*, the Supreme Court summarized the "accepted pleading standard": "once a claim has been

---

[1] Fed. R. Civ. P. 8(a)(2).

[2] Fed. R. Civ. P. 12(b)(6).

[3] *McCarthy v. City of Cordele, Georgia*, 111 F.4th 1141, 1145 (11th Cir. 2024); *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."[5]

### III. Statutory Background

The Clean Water Act ("CWA") allows an action against any person alleged to be in violation of an "effluent standard or limitation," which includes an "unlawful act" under § 301(a).[6] CWA § 301(a) makes it "unlawful" to discharge any pollutant except "in compliance with" specific sections, including §§ 402 and 404.[7]

**A. CWA Section 402**

The phrase "discharge of a pollutant" means any addition of a pollutant to waters of the United States ("waters of the U.S.") from any point source.[8] A National Pollutant Discharge Elimination System permit ("NPDES permit") issued under CWA § 402 is required to

---

[5] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

[6] 33 U.S.C. § 1365(a)(1), (f)(7); Complaint, Doc. 1 at 5, ¶ 21.

[7] 33 U.S.C. §§ 1311(a) (*referencing* 33 U.S.C. §§ 1342 and 1344); Complaint, Doc. 1 at 6, ¶ 22.

[8] 33 U.S.C. § 1362(7), (12); Complaint, Doc. 1 at 6, ¶ 23.

lawfully discharge any pollutant,[9] including stormwater associated with construction activity.[10] Construction activity includes clearing or grading that results in land disturbance of at least one acre.[11] EPA established a one-acre threshold because at smaller sites, stormwater is less likely to channelize and create a point source discharge.[12]

Non-point-source agricultural and silvicultural activities are exempt from NPDES permitting requirements, but stormwater discharges associated with industrial activity — including solar farms — require coverage under an NPDES permit.[13]

---

[9] 33 U.S.C. §§ 1311(a), 1342(a); 40 C.F.R. §§ 122.3, 122.21(b).
[10] 33 U.S.C. § 1342(p)(3)(A), (p)(6); 40 C.F.R. § 122.26(b)(14)(x), (b)(15), (c)(1).

[11] 33 U.S.C. § 1342(p)(3)(A), (p)(6); 40 C.F.R. § 122.26(b)(14)(x), (b)(15), (c)(1).

[12] Complaint, Doc. 1 at 6, ¶ 27.

[13] 33 U.S.C. § 1342(l)(1), (l)(3), (p)(3), (p)(6); 40 C.F.R. § 122.3(e); *United States v. Swinerton Builders*, No. 24-CV-00274-EMC, 2024 WL 3407681 (N.D. Cal. July 12, 2024) (consent decree to resolve construction of solar farms without NPDES permits); See also, *H&L Farms LLC v. Silicon Ranch Corp.*, No. 4:21-CV-134 (CDL), 2023 WL 3443273 (M.D. Ga. Apr. 11, 2023) (admitting evidence that NPDES permit was required for solar farm construction project to support negligence per se claim); Complaint, Doc. 1 at 7, ¶¶ 31-32.

B.  **CWA Section 404**

A permit issued by the U.S. Army Corps of Engineers under CWA § 404 is required to lawfully discharge fill material into waters of the U.S.[14] "Fill material" means material placed in waters of the U.S. where the material has the effect of (i) replacing any part of a water of the U.S. with dry land, or (ii) changing the bottom elevation of any part of a water of the U.S. 33 U.S.C. § 323.2.(e)(1).

Filling a stream channel requires a § 404 permit from the Corps.[15] The agricultural and silvicultural exemption "does not include the construction of farm, forest, or ranch roads" except "where such roads are constructed and maintained in accordance with best management practices (BMPs) to assure that flow and circulation patterns" of waters of the U.S. are not impaired.[16] To qualify under this exemption, required BMPs include: installing a bridge or culvert "to prevent the restriction of expected flood flows;" stabilizing the crossing "to prevent

---

[14] 33 U.S.C. §§ 1311(a), 1344; 33 C.F.R. § 323.3(a).

[15] 33 C.F.R. §§ 323.3(a), 323.4(c).

[16] 33 C.F.R. § 323.4(a)(1)(iii)(B), (a)(6).

5

erosion;" and designing and constructing the crossing to prevent disrupting the movement of aquatic life.[17]

## IV. Factual Allegations

### A. The Cheeks Alleged that A&F Properties Discharged Pollutants into Waters of the U.S. Without a Permit.

The Cheeks' complaint included these factual allegations:

> Around 165 acres of trees and around 50 acres of grass were cleared, grubbed, and graded at the project site without erosion control. (*p. 4, ¶ 10*).
>
> Stormwater is discharged as channelized runoff into two streams on the project site. (*p. 4, ¶ 11*).
>
> The streams on the project site are relatively permanent, continuously flowing tributaries of Big Cedar Creek. (*p. 4, ¶ 12*).
>
> Since the land disturbance, eroded soil from the project site pollutes the tributary streams when it rains, and the lake remains turbid with suspended sediment for weeks after the rain stops. (*p. 4, ¶ 14*).
>
> Stormwater runoff on the project site formed channels in the ground, creating point source discharges that convey stormwater with eroded soil into the tributary streams. (*p. 7, ¶ 29*).
>
> Despite clearing and grading around 215 acres for a solar farm, defendants did not obtain NPDES permit coverage. (*p. 8, ¶ 39*).
>
> Defendants did not install best management practices for erosion control that would have been required by an NPDES permit. (*p. 8, ¶ 40*).

---

[17] 33 C.F.R. § 323.4(a)(6)(iii), (iv), (vii).

Defendants' failure to install best management practices for erosion control and stabilize the site with vegetative ground cover cause sediment-polluted stormwater to be channelized and discharged into tributary streams on the project site. (*p. 9, ¶ 41*).

### B. The Cheeks Alleged that A&F Properties Discharged Fill Material into Waters of the U.S. Without a Permit.

The Cheeks' complaint included these factual allegations:

Defendants filled part of a stream channel to use as a road crossing on the project site. (*p. 5, ¶ 17*).

Fill material (dirt) was placed in around 25 linear feet of stream channel in the project site's western tributary to create a road crossing. (*p. 10, ¶ 46*).

Filling the stream channel replaced part of a water of the U.S. with dry land, converted an area of the water into a use to which it wasn't previously subject, elevated the bottom of a water of the U.S., and impairs the flow of water. (*p. 10, ¶ 47*).

The stream was filled without a bridge or culvert, without stabilization, and without allowing for the movement of aquatic life. (*p. 11, ¶ 52*).

Defendants didn't obtain an individual permit and the activity wasn't authorized under a nationwide permit ("NWP"), which is a type of general permit. (*p. 11, ¶ 53*).

### C. The Cheeks Alleged that A&F Properties' Site Was Cleared for a Solar Farm.

The Cheeks' complaint included these factual allegations:

The project site was cleared and graded for a solar farm (photovoltaic solar panels attached to the ground absorb the sun's energy, which is then converted to electricity and sent to the power grid). (*p. 7, ¶ 30*).

7

> The project site previously had pasture and forest, but defendants graded the land not as part of any agricultural or silvicultural activities, but for commercial energy development. (*p. 7, ¶ 33*).
>
> The nature and extent of land disturbance at the project site altered soil conditions, rendering the site incompatible with any agricultural or silvicultural crop that could grow there. (*p. 8, ¶ 36*).
>
> Defendants' actions — including widespread stump removal, deep burial of debris, excessive grading, and failure to implement erosion control — are inconsistent with any standard practice for agriculture or silviculture. (*p. 8, ¶ 37*).
>
> Franklin Rene Fountain expressly acknowledged he was preparing the site for use as a solar farm. (*p. 8, ¶ 38*).

## V.   Argument and Authority

### A. The Cheeks Alleged Facts to Plausibly Support their Clean Water Act Claims.

Defendants Abney and Fountain Properties, LLC and Franklin Rene Fountain (collectively "A&F Properties") contend the allegation that the project site was cleared for a solar farm "is blatantly untrue *and thus* does not meet the standard for plausible allegations."[18] This conflates truthfulness with plausibility. Courts reviewing Rule 12(b)(6) motions must presume non-conclusory factual allegations to be true

---

[18] *Memorandum,* Doc. 7-1 at 2 (emphasis added).

8

and then determine whether those allegations plausibly state a claim for relief.[19]

In *Ashcroft v. Iqbal,* the Supreme Court explained that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[20] The Court advised that the "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[21]

Javaid Iqbal had alleged facts showing his constitutional rights were deprived, but his allegations did not support a claim against the only defendants in the case before the Supreme Court — former Attorney General John Ashcroft and FBI Director Robert Mueller.[22] To prevail on a claim against these defendants would require showing they "purposefully adopted a policy" of classifying detainees based on race,

---

[19] *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009); *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010).

[20] *Iqbal*, 556 U.S. at 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

[21] *Id.*

[22] *Iqbal*, 556 U.S. at 666.

9

religion, or national origin, but the complaint did not show, "or even intimate," that Attorney General Ashcroft or Director Mueller classified detainees based on these constitutionally protected characteristics.[23]

The Supreme Court explained that Rule 8(a)(2)'s pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[24] The Court cautioned, however, against deciding factual disputes: "To be clear, we do not reject these bald allegations on the ground that they are unrealistic or nonsensical. ... It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."[25]

A&F Properties' reliance on *Bell Atlantic Corporation v. Twombly* is similarly misplaced. William Twombly claimed that defendants violated the Sherman Act by conspiring to stifle competition. Section 1 of the Sherman Act prohibits anticompetitive conduct resulting from

---

[23] *Id.* at 682-83.

[24] *Id.* at 678 (*quoting Twombly*, 550 U.S. at 555).

[25] *Iqbal*, 556 U.S. at 681.

agreements but does not prohibit anticompetitive conduct resulting from independent decisions.[26]

The Supreme Court held that a § 1 claim "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made."[27] Twombly's complaint did not meet this standard as it did "not set forth a single fact in a context that suggests an agreement."[28] The Court characterized the alleged wrongdoing as "routine market conduct" and observed that if the alleged conduct "were enough to imply an antitrust conspiracy, pleading a § 1 violation against almost any group of competing businesses would be a sure thing."[29]

Unlike the conclusory allegations in *Twombly* and *Iqbal*, the Cheeks have alleged specific facts showing that A&F Properties' parcel was cleared for a solar farm, not for agricultural or silvicultural purposes. These factual allegations plausibly support the Cheeks' claim

---

[26] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553 (2007).

[27] *Id.* at 556.

[28] *Id.* at 561–62.

[29] *Id.* at 566.

that A&F Properties violated the Clean Water Act by clearing the site without a permit.

Whether the agricultural exemption for normal farming activity applies here is disputed. A&F Properties claims that trees were cleared to expand the pasture.[30] But if that were true, why was the pasture also cleared? *See* Complaint, Doc. 1 at 4, ¶ 10 ("around 50 acres of grass were cleared, grubbed, and graded"), and Doc. 1 at 7, ¶ 33 ("The project site previously had pasture").

At this stage of the case, what matters is that the Cheeks have alleged in good faith that the site was cleared to convert an agricultural use to an industrial use for a solar farm. A&F Properties can raise an agricultural exemption defense either at summary judgment, if the evidence shows that the Cheeks' allegations raise no genuine issue of fact, or at trial, where the trier of fact can weigh the evidence and assess witness credibility.

Even if the Cheeks' complaint had not alleged facts showing that stormwater discharges from the project site require coverage under an NPDES permit (Count 1), the complaint still alleges facts showing that a road crossing was placed in the stream channel without the required

---

[30] *Memorandum*, Doc. 7-1 at 2, 8.

12

§ 404 permit (Count 2). As stated above at pages 5–6, construction of a farm or forest road is exempt from § 404's permit requirement only if best management practices are used to ensure that the flow and circulation patterns of waters of the U.S. are not impaired.[31]

The Cheeks alleged that the road crossing was constructed in a stream on the project site without the practices required for the exemption.[32] This factual allegation plausibly supports that A&F Properties violated CWA § 301(a) by filling the stream channel without a § 404 permit.

## VI.  Conclusion

Despite moving for dismissal under Rule 12(b)(6), A&F Properties ask this Court to resolve a factual dispute. The Cheeks have pleaded facts that, if taken as true, establish violations of CWA § 301(a). These well-pleaded allegations plausibly demonstrate that the Cheeks have a right to sue A&F Properties for violating the Clean Water Act. The Court should thus deny A&F Properties' motion to dismiss.

---

[31] 33 C.F.R. § 323.4(a)(1)(iii)(B), (a)(6).

[32] Complaint, Doc. 1 at 11, ¶¶ 50-52.

Filed May 20, 2025.

/s/ Jon Schwartz

Jon Schwartz
Ga. Bar. No. 631038
*Attorney for Plaintiffs Michael and JoAnn Cheek*

**Law Office of Jon Schwartz**
1100 Peachtree St., N.E., Suite 200
Atlanta, GA 30309
404-667-3047
jon@jonschwartz.net

## Font and Point Certification

This brief was prepared with 13-point Century Schoolbook font.